Argued and submitted June 26, 2012, affirmed May 15, 2013

In the Matter of the Compensation of
Roxanne F. Balcom, Claimant.

Roxanne F. BALCOM,
*Petitioner,*

*v.*

KNOWLEDGE LEARNING ENTERPRISES,
*Respondent.*

Workers' Compensation Board
0901465; A148227

302 P3d 1208

Robert S. Kinney argued the cause for petitioner. With him on the opening brief was Martin L. Alvey. With him on the reply brief was Martin L. Alvey, P.C.

Jerald P. Keene argued the cause for respondent. With him on the brief was Oregon Workers' Compensation Institute, LLC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Claimant seeks judicial review of an order of the Workers' Compensation Board (the board), as supplemented and adhered to on reconsideration, upholding employer's denial of her combined condition claim involving L5-S1 foraminal stenosis. Specifically, claimant asserts that the board committed "an error of law in finding [a particular doctor's] opinion persuasive in supporting [that] combined condition denial despite the fact [that the doctor] did not believe [that claimant's] work injury was a material cause of her disability or need for treatment." We conclude that claimant failed to preserve that argument for judicial review as required by ORAP 5.45(1). Accordingly, we affirm.

The relevant facts are as follows. On April 21, 2008, while working for employer at a "Kinder Care Center," claimant suffered a compensable injury to her lower back when she bent down and lifted a small child. Upon rising with the child in her arms, claimant's "back popped and she had immediate pain in her low back located on the left side." Claimant had never suffered injury or sought treatment related to her lower back prior to that incident. She was initially diagnosed with, and treated for, a lower back strain, and employer accepted her claim for a "lumbosacral strain" on May 12, 2008.

Despite a course of physical therapy, claimant's symptoms did not abate. After X-rays and an MRI showed, in pertinent part, "foraminal stenosis on the left side at L5-S1[,]" claimant began treating with Dr. Lorish, who immediately ordered a bone scan. That bone scan, as interpreted by radiologist Koesel, showed signs of degenerative disease in claimant's lumbar spine and findings consistent with foraminal stenosis.

Following an insurer-requested independent medical examination (IME) that produced findings of "preexisting degenerative disc disease[,]" Lorish opined that "[t]he [work injury] made [the] degenerative areas symptomatic" and referred claimant to a neurosurgeon, Dr. Sandquist. Sandquist reviewed the MRI and bone scan and noted, in pertinent

part, degenerative disc disease and foraminal stenosis at L5-S1. Claimant then underwent a CT scan that "confirmed the degenerative disease largely isolated to L5-S1 and left greater than right foraminal stenosis." Sandquist recommended surgery.

On November 24, claimant underwent another IME. That doctor opined that claimant's condition was "clearly arthritic," explaining that the work injury had resulted in a "mild lumbar strain * * * superimposed on and combining with * * * a pre-existing arthritic condition." Lorish did not concur, opining that Sandquist's recommended surgery was "necessitated because of the underlying accident which combined with the underlying condition is the cause of her need for ongoing treatment."

On February 17, 2009, claimant requested acceptance of additional medical conditions including, in pertinent part, a "[l]umbosacral strain dated April 21, 2008 combined with left greater than right L5-S1 foraminal stenosis causing symptomatic, left greater than right, L5-S1 foraminal stenosis requiring [surgery]." After denying compensability of claimant's other additional medical condition claims (which are not at issue on judicial review), employer amended the scope of its original acceptance to include "lumbosacral strain combined with preexisting noncompensable degenerative arthritis." It subsequently issued a current condition ceases denial of that accepted condition, stating that "[i]t is our position [that] the accepted April 21, 2008 lumbosacral strain is no longer the major contributing cause of [claimant's] combined condition."

On May 5, 2009, claimant underwent yet another IME—this time performed by Dr. Strum, who opined that disc degeneration was "entirely responsible for [claimant's] low back complaints" and further opined that "[t]he major contributing cause of [claimant's] post-March 2009 low back disability and need for treatment is preexisting degenerative arthritis at L5-S1." A subsequent medical arbiter examination (MAE) confirmed Strum's finding of degenerative arthritis.

Finally, on October 27, 2009, claimant reported for her final IME, this time conducted by Dr. Carr. Carr recorded the following diagnoses:

"1. Accepted condition: Lumbosacral strain combined with pre-existing noncompensable degenerative arthritis, resolved and medically stationary with claim closure.

"2. Degenerative disc disease mild at L4-5, pre-existing.

"3. Degenerative disc disease, L5-S1, severe, pre-existing with bilateral foraminal stenosis, left worse than right."

In response to questions posed by the insurer, Carr opined that, "[w]hen one looks at the pathology of [claimant's] spine, it would appear that the significant degeneration at L5-S1 is the underlying source of [claimant's] current low back symptoms." More specifically, when asked whether claimant's April 2008 work injury "constitute[d] a material cause" of claimant's lumbar "disc pathology" or foraminal stenosis, Carr opined:

"These were pre-existing conditions and there is *no evidence that this lifting incident had any material affect* [sic] upon the pathology at these levels. * * *. As far as the affect [sic] of the lifting incident of 04/21/08 on the foraminal stenosis, this stenosis is part and parcel of the degenerative process * * *. This *condition was not altered by the lifting incident of 04/21/08.*

"* * * * *

"As discussed above, [claimant] has pre-existing degenerative changes in her lumbar spine. These are quite severe at L5-S1 and in my opinion they are the cause of her current low back pain, disability, and need for treatment."

(Emphases added.) In addition, when asked about the relationship between claimant's April 2008 work injury and claimant's preexisting conditions, Carr was asked by the insurer to "[a]ssume for the purpose of [that] question that the 04/21/08 work injury [was] a material cause of [claimant's] L4-S1 problems." Carr responded as follows:

"If one 'assumes' for the purpose of discussion that the 04/21/08 work injury was a material cause of [claimant's]

L4-S1 problems there would be a combining of the results of the work incident with the pre-existing conditions. The incident would have resulted in a strain injury which would have combined with the pre-existing conditions at L4-5 and L5-S1."

Ultimately, Carr went on to opine that claimant's work injury was not the major contributing cause of her disability or need for treatment, instead attributing claimant's disability and need for treatment to her "significant degenerative disc disease at L5-S1."

Lorish did not concur with Carr's report, nor did he concur with Strum's. Rather, he opined that "the major cause of [claimant's] ongoing disability and need for additional medical treatment is the work injury * * *." Likewise, Sandquist reiterated, on December 18, 2009, his opinion that "the work injury is the major contributing cause of [claimant's] disability or need [for] medical treatment of her combined condition."

Claimant requested a hearing to challenge employer's aforementioned denials, and a hearing was convened before an administrative law judge (ALJ) on December 18, 2009. Following that hearing, the ALJ set aside employer's denial "with regard to L5-S1 left sided foraminal stenosis." The ALJ reasoned:

"All of the insurance examiners agree, as do claimant's treating physicians, Drs. Lorish and Sandquist, that the low back strain standing on its own has resolved and is not the major cause of claimant's disability and need for treatment. Rather claimant's disability and need for treatment is related to the foraminal stenosis and facet syndrome associated with the stenosis. While the insurance examiners indicate that this is primarily a degenerative process with little impact from the compensable injury, Drs. Sandquist and Lorish explain and I find that the injury is the major cause of claimant's current disability and need for treatment. The bone scan in particular is consistent with an acute exacerbation of the stenosis as is claimant's ongoing disability and need for treatment since the injury in the absence of any prior symptoms or need for treatment."

Employer requested review of the ALJ's decision to set aside employer's denial of claimant's L5-S1 foraminal stenosis condition.[1] In turn, on January 19, 2011, the board issued an order reversing the ALJ. In doing so, it found "Dr. Carr's opinion, as supported by Dr. Strum, to be the most persuasive." Specifically, the board was persuaded by Carr's opinion that "underlying preexisting L5-S1 pathology"—claimant's "degenerative condition"—constituted the major contributing cause of claimant's disability or need for treatment. Likewise, the board noted that Strum "explained that any contribution from claimant's work injury to the L5-S1 condition was minor, and would have no impact on the underlying [preexisting degenerative] pathology that resulted in her need for treatment." Addressing the opinions of claimant's treating physicians at some length, the board stated that, "[i]n contrast to Dr. Carr's well-reasoned opinion, we are not persuaded by the contrary medical opinions of Drs. Lorish and Sandquist * * *."

Following the board's decision, claimant moved for reconsideration. In so doing, claimant argued in large part that the board's reliance on Carr was "misplaced and erroneous" given that, specifically, Carr purportedly "did not review **all** of the imaging studies[,]" namely the bone scan, and "improperly relie[d] on a statistical analysis as the basis for his medical opinion * * *." (Boldface and underscoring in original.) The board, however, adhered to and republished its January 19, 2011, order "in its entirety" as supplemented by a brief order on reconsideration dated March 1, 2011. That order on reconsideration primarily addressed claimant's assertion that Carr's opinion was deficient insofar as it did not include consideration of the bone scan (noting that Carr's report did "describe[ ] the radiologist's report of the bone scan") and relied on general statistics. The board additionally emphasized its concomitant reliance on Strum's opinion, as well as its finding that Lorish and Sandquist were "unpersuasive" due to "inconsistencies" in their opinions. Claimant then petitioned for judicial review.

---

[1] The board addressed only claimant's L5-S1 foraminal stenosis condition; claimant did not seek to challenge those portions of the ALJ's order upholding employer's other denials, and, in fact, requested before the board that "the ALJ's careful and balanced decision be affirmed in full." On judicial review, claimant likewise addresses only her combined condition claim for L5-S1 foraminal stenosis.

On judicial review, claimant argues that the board committed legal error in "finding [Carr's] opinion persuasive" given that he "did not believe [that claimant's] work injury was a material cause of her disability or need for treatment."[2] Employer responds, first, that claimant's argument was not preserved below as required by ORAP 5.45(1).[3] We agree with employer. *See State v. Wyatt*, 331 Or 335, 341-43, 15 P3d 22 (2000) (noting that this court generally will not consider an unpreserved issue on appeal and that "a party must provide the trial court with an *explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error* with enough clarity to permit it to consider and correct the error immediately, if correction is warranted" (emphasis added)); *Baker v. DMV*, 201 Or App 310, 313, 118 P3d 852 (2005) ("The rules of preservation apply on judicial review of administrative agency orders.").

Claimant first argued before this court that her assignment of error was preserved when she "made the same argument to the Board in her Respondent's (Claimant's) Board Brief." However, employer responded that no such argument was made by claimant before the board, noting that employer "was unable to locate where the issue [claimant] raises was preserved before the Board."[4] In turn, claimant changed course, asserting in her reply brief, for the first time, that her "argument that [the ALJ's] Order should have been affirmed in its entirety is sufficient to preserve the question of legal error."[5]

---

[2] More specifically, claimant argues that it was legal error for the board to find Carr's opinion persuasive in concluding that employer had met its burden to prove that claimant's work injury was not the major contributing cause of her disability or need for treatment under ORS 656.005(7)(a)(B) and ORS 656.266(2).

[3] ORAP 5.45(1) provides, in relevant part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the record."

[4] In fact, claimant conceded at oral argument before this court that she did not argue before the board that legal error was committed in connection with Carr's opinion that claimant's work injury did not materially contribute to her disability or need for treatment. Rather, at oral argument, claimant confirmed what the record reflects—that she simply advanced arguments below regarding the persuasive weight to be attributed to the various doctors' opinions.

[5] Alternatively, claimant argues that the purported error is plain and requests that we exercise our discretion to correct it. *See generally State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (setting forth prerequisites for plain error review);

As employer points out, and as claimant conceded at oral argument before this court, nowhere in claimant's briefing before the board did she raise the argument that she now advances on judicial review. Although claimant did mention in her briefing before the board that "Dr. Carr was asked to assume the work injury was a material cause[,]" claimant at no point raised any concern regarding the board's authority to afford persuasive weight to Carr's opinion *as a matter of law*. Rather, the record is replete with argument regarding the *amount* of persuasive weight that Carr's and the other doctors' reports should have been afforded. At no point did that extensive debate regarding the persuasive value of the various doctors' opinions include any suggestion by claimant that Carr's opinion simply could not be afforded any weight as a matter of law because "he did not believe [that claimant's] work injury was a material cause of her disability or need for treatment."

As to claimant's prior support for the ALJ's reasoning—now the sole basis for her assertion that her argument is preserved—examination of the ALJ's opinion and order does not change our conclusion that claimant failed to preserve below the assignment of error that she now raises on judicial review. In pertinent part—that is, in that portion of the ALJ's reasoning cited by claimant—the ALJ stated:

> "I do not find that the medical opinions from the insurance examiners, Drs. Coulter, Strum and Carr, are sufficiently persuasive to support the employer's burden of proof. I agree with claimant that the examiners give either no or insufficient weight to the findings from the bone scan suggesting a significant contribution from the injury to the foraminal stenosis. * * *

> "The [IME] examiners describe claimant's underlying preexisting degenerative process at L5-S1 as significant. That does not appear to be in dispute. They conclude that it is the major cause of claimant's disability and the need for treatment. What they do not adequately explain is why, in the absence of any prior disability and need for treatment

---

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 382 n 6, 823 P2d 956 (1991) (guiding affirmative exercise of discretion to reach and correct plain error). We reject that argument without discussion.

or even symptoms, the preexisting condition would shortly after the injury, by the time the strain resolved, become the major cause of claimant's disability and the need for treatment including potentially surgery when she had no problems with her back before the injury and has had consistent problems since. This apparent coincidence is inadequately explained. The examiners describe the injury as [a] relatively innocuous event and basically view it as having caused at most a strain which resolved long ago. If that is the case, their explanation for claimant's continuous and unchanged ongoing disability for two years is inadequately explained."

In other words, the ALJ did note that Carr, along with other doctors, inadequately explained the role of claimant's work injury in producing her disability and need for treatment. However, we cannot find within that language any indication that the ALJ determined that Carr's opinion was deficient as a matter of law such that affording it persuasive weight would have amounted to legal error by the board.

To the contrary, the ALJ expressly stated that "[t]he insurer's examiners universally indicate that the major cause of claimant's disability and the need for treatment is the preexisting condition as opposed to the injury. *They do not really dispute, however, that the injury played at least a <u>material</u> role* in the onset of claimant's the [*sic*] need for treatment for the stenosis." (Italics and underscoring added.) And, as set forth above, although the ALJ found the opinions of Coulter, Strum, and Carr unpersuasive and "inadequately explained[,]" he did not suggest that affording persuasive weight to those opinions would be impermissible as a matter of law. Thus, claimant's contention that her "argument that [the ALJ's] Order should have been affirmed in its entirety is sufficient to preserve the question of legal error" is without merit.

Finally, the contents of claimant's request for reconsideration before the board lend further support to our conclusion that claimant simply did not raise her current argument below. In moving for reconsideration—while she did challenge the board's reliance on Carr's opinion as "erroneous"—claimant rested her argument on contentions that Carr failed to consider the bone scan and purportedly

relied improperly upon statistical analysis in reaching his conclusions. Specifically, claimant argued that

> "[t]he record is manifestly clear that Dr. Carr did not review **all** of the imaging studies. Notoriously absent from Dr. Carr['s] analysis is **any** mention of the results of the bone scan. * * *

> "* * * Without evidence that Dr. Carr reviewed or even commented on the key study establishing the *presence* of acute pathology, the basis for the Board's conclusion deferring to Dr. Carr is erroneous and without basis.

> "Second, Dr. Carr improperly relies on a statistical analysis as the basis for his medical opinion * * *. * * * While statistical studies can be appropriate in evaluating causation, predictions from a generalized statistical study that fail to incorporate an injured worker's particular circumstances *are not persuasive*."[6]

(First italics, boldface, and underscoring in original; second italics added.) That is, claimant did *not* argue on reconsideration that reliance on Carr's opinion constituted reversible legal error because Carr did not consider claimant's work injury to be a material cause of her disability or need for treatment.

In sum, we agree with employer that claimant's argument that the board "could not deem [Carr's opinion] persuasive without committing 'legal error' * * * goes beyond mere evidentiary debate and amounts to a legal position or objection that ought to have been posed for fair consideration by the Board before being presented to this court as a basis for reversal." Claimant failed to preserve for judicial review the argument that she now advances, and, accordingly, we do not address that argument.

Affirmed.

---

[6] A footnote associated with the above-quoted text further illustrates claimant's reliance on the *weight* to be afforded Carr's opinion as opposed to advancement of an argument—as she now does on judicial review—that the board was simply not entitled to rely, as a matter of law, on Carr's opinion due to his view regarding the work injury's role. Claimant argued on reconsideration that, where "there is a dispute between medical experts, more *weight* is given to those medical opinions which are both well reasoned and based on complete information. In the absence of any mention of the bone scan, Dr. Carr's opinion is *neither well-reasoned nor based on complete evidence*." (Internal citations omitted; emphases added.)